## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BRIDGET MCCARTER,**

     **Plaintiff,**

**v.**                         **CASE NO.: 5:18-cv-157-RH/MJF**

**MHM HEALTH PROFESSIONALS,**
**INC.**

     **Defendant.**

_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant MHM Health Professionals, LLC ("MHMHP")[1], by and through its undersigned counsel and pursuant to Fed.R.Civ.P. 56, hereby moves for summary judgment. The grounds upon which the instant motion is based are set forth in the following Supporting Memorandum of Law.

### SUPPORTING MEMORANDUM OF LAW

### I.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.**    **Background**

1.    MHMHP contracts with Centurion of Florida, LLC ("Centurion") to provide inmate health care services within Centurion's contract with the Florida Department of Corrections ("FDOC"). [*Id.* at 27-28:8-1; Amd. Compl., ¶ 7].

---

[1] MHMHP was converted from a corporation to a limited liability company effective December 31, 2018.

2.     Bridget McCarter ("McCarter")[2] was employed by MHMHP as a Health Services Administrator ("HSA") at Jackson Correctional Institution ("Jackson" or "Jackson C.I.") and reported to Regional Director Kimberly Prescott ("Prescott").  [Mc. Dep., 23:11-15; 27:5-14; 9:16-18; 78:12-14; Amd. Compl., ¶¶ 14, 15][3].

3.     As an HSA, McCarter's duties included:  arriving in a timely manner [Dep. Ex. 21, p.1][4]; managing the administration of the medical departments, including the medical, mental health and dental departments [Mc. Dep., 28:5-8]; participating in mortality reviews [*Id.* at 29:9-11]; and answering inmate grievances in a timely manner.  [*Id.* at 20:17-22; 44:5-16].

4.     McCarter was also required to be familiar with and enforce FDOC and MHMHP policies, including the MHMHP time and attendance policy.  [*Id.* at 50:17-25].

5.     In January of 2017, regional management had identified concerns with management at Jackson.  [*Id.* 35:19-21].  As a result of a lack of communication between McCarter and the Director of Nursing, regional management suggested a corrective action plan in order to get the management team and the nurses on the same page.  [*Id.* at 36-37:4-23; Dep. Exs. 13, 14, 15].

---

[2] The deposition of Bridget McCarter, taken on March 25, 2019, will be referred to herein as "Mc. Dep., _____."
[3] The Amended Complaint [Doc. 8] will be referred herein as "Amd. Compl."
[4] Exhibits from the deposition of Bridget McCarter will be referred herein as "Dep. Ex.____."

**B.**   __McCarter's Attendance Issues__

1.     As an HSA, McCarter was required to "maintain a satisfactory level of attendance and punctuality in order to fulfill contract requirements."  [Dep. Ex. 21, p. 1].

2.     The scheduled work hours for HSAs vary from facility to facility as prescribed by the worksite or the contract.  [*Id.*].

3.     McCarter was required to clock in at or before 7:00 a.m. because Jackson's hours of operation are from 7:00 a.m. until 3:30 p.m.  [Mc. Dep., 67:2-19].  The Warden expected McCarter at her desk at 7:00 a.m. regardless of what time McCarter left the facility the night before.  [Pr. Dep., 53:18-22].[5]

4.     On Mondays, McCarter was permitted to clock in by 7:30 a.m. due to the Warden's weekly meeting.  [Mc. Dep., 56:14-18].

5.     Prescott oversaw McCarter's time and attendance and it was a matter of concern to Prescott whether McCarter showed up on time because it was a direct reflection on MHMHP. [Pr. Dep., 42:22-24; 47-48:23-14].  Moreover, McCarter's tardiness created potential issues with the Warden and the facility. [Pr. Dep., 48:15-18].

---

[5] The deposition of Kimberly Prescott, taken on April 30, 2019, will be referred to herein as "Pr. Dep., _____."

ACTIVE 43011550v2

6.     Prescott received complaints from Lisa Barton, Regional Director of Nursing, that the nursing staff was reporting that McCarter was not at work on time. [Pr. Dep., 44-45:25-14].

7.     After receiving a call from Lisa Barton, Prescott reminded McCarter in an e-mail on January 8, 2017 that she was expected to arrive at Jackson before 7:00 a.m. [Mc. Dep., at 54-55:19-20; Dep. Ex. 22; Pr. Dep., 44-45:25-6].

8.     On January 23rd, Prescott again sent McCarter an email to remind her that she was expected to clock in at or before 7:00 a.m. [Mc. Dep., 55-56:21-10; Dep. Ex. 23].

9.     Despite these reminders, McCarter was late on January 25, 2017 and on March 3, 2017. [Dep. Ex. 26].

10.     On March 13, 2017, McCarter received a written warning for her continued late arrival to work, as well as her delay in responding to inmate grievances. [Dep. Ex 26]. The written warning did not result in a reduction in pay. [*Id.* at 72:20-22].

11.     McCarter was aware as of March 13, 2017 that Prescott expected her to clock in by 7:00 a.m. [Mc. Dep., 66-67:23-1].

12.     After receiving this written counseling, McCarter continued to be late or absent – McCarter was late 9 times (March 15, 21, 22, and April 4, 5, 6, 10, 14,

ACTIVE 43011550v2

17, and 18) and called in sick 7 times (March 17, 24, 29, 30, and April 7, 12, 13) between March 13, 2017 and April 14, 2017. [Dep. Ex. 27].

13.   McCarter cannot identify anyone at MHMHP who was late or who called in late that number of times after receiving a written warning for attendance. [Mc. Dep., 71:6-18].

14.   On April 14, 2017, McCarter received a final warning for time and attendance and for lack of responsiveness. [Dep. Ex. 27]. McCarter was not demoted, nor did she lose any pay, as a result of the final warning. [Mc. Dep., 72:15-19].

15.   McCarter was late approximately 155 times between May 23, 2016 through the date of her termination on May 11, 2017. [Decl., ¶ 11].[6]

16.   McCarter was late approximately 51 times *after* receiving the January 8, 2017 email from Prescott reminding her of her obligation to arrive at or before 7:00 a.m. [*Id.* at ¶ 12].

17.   McCarter does not dispute the time records reflecting her late arrivals or absences. [Mc. Dep., 67:7-9].

18.   Prescott also testified that the dates of tardiness and absenteeism listed in the written warnings are accurate. [Pr. Dep., 86-87:25-18; 102-103:23-21].

---

[6] The Declaration of Lisa Lynch will be referred herein as "Decl., ____."

ACTIVE 43011550v2

Prescott verified the dates by using MHMHP's timekeeping system. [*Id.* at 87:14-18].

19.     Prescott cannot identify the number of time in which McCarter was late, nor can she identify the amount any other HSA was late. Therefore, Prescott cannot identify anyone who was late as many times, or more, than McCarter. [Pr. Dep., 49-50:25-7].

20.     McCarter also cannot identify *anyone* who clocked in after their scheduled time more than she did. [Mc. Dep., 59:22-24].

21.     Instead, McCarter points to two HSAs who reported to Prescott who would come in *early* for their shifts, not late. [Mc. Dep., 69:1-13]. McCarter does not know whether those individuals discussed arriving earlier than 7:00 a.m. with Prescott. [*Id.* at 69:3-21].

22.     McCarter admittedly cannot identify anyone who was late or absent after receiving a final warning for attendance. [*Id.* at 81-82:23-2].

23.     After receiving the final written warning, McCarter was again late on April 19, 2017 and called in on May 3 and May 9. [*Id.* at 81:9-22; Dep. Ex. 30].

24.     McCarter was terminated on May 11, 2017 for continued time and attendance deficiencies and for lack of responsiveness. The termination notice stated:

"[s]ince receiving a final warning for attendance on April 19, 2017, Ms. McCarter has been late on the following dates: April 19. The

following week she repeatedly worked less than an 8 hour day, resulting in 5.5 hours of Unplanned PDO and 1.25 hours Exempt pay being used at close of payroll. In addition, Ms. McCarter called on May 3 and 9th, and did not have sufficient Paid Days Off to cover all of her absence. In addition to the attendance issues, there continues to be a noted lack of responsiveness. Ms. McCarter's lack of responsiveness has been noted by her direct supervisor, other Regional Leadership, and our client. Our client has brought forward the lack of responsiveness to include several informal grievances and requests not being addressed within required time frames, which put Jackson CI out of FDC compliance. Our client has expressed that Ms. McCarter is not meeting their expectations of a Health Services Administrator."

[Dep. Ex. 30].

## C. McCarter's Failure To Timely Respond To Inmate Grievances/Lack Of Responsiveness

1.     McCarter was required by the FDOC to answer inmate grievances in a timely manner.  [Mc. Dep., at 44:5-16].

2.     McCarter had a discussion with the Jackson Warden prior to March 8, 2017, in which he emphasized to her the importance of completing inmate grievances in a timely manner.  [*Id.* at 44:5-20; 45:8-12].

3.     On March 8, 2017, the Warden *again* reminded McCarter of the importance of timely responses to grievances.  [*Id.* at 44:5-20]. McCarter cannot identify anyone else who was counseled twice by a warden regarding lack of responsiveness to grievances.  [*Id.* 73:7-10].

4.     McCarter claims that she told Prescott that the Assistant Warden's secretary, an employee of the FDOC, was not giving McCarter the grievances in a

7

timely manner and McCarter therefore could not complete the grievances in a timely manner.  [Amd.Compl., ¶¶ 18, 20].

5.     The secretary was not an employee of MHMHP, nor a direct report of Prescott.  [Mc. Dep., 47:12-17].

6.     McCarter never informed the Warden that the Assistant Warden's secretary was not providing the grievances in a timely manner.  [*Id.* 46:18-25].

**D.     McCarter's Participation In Mortality Reviews**

1.     In the event of an inmate death, the FDOC requires a mortality review process to be completed.  [*Id.* at 29:2-5; 30:9-11].

2.     Reviews that are not completed within 10 days result in a corrective action plan ("CAP") on an OHS audit and cause a delay in closure of the case file.  [Dep. Ex. 9].

3.     During the review process, the HSA, the Facility Clinician, the Director of Nursing, and the Regional Medical Director are required to meet to discuss the case file and evaluate the events leading up to the inmate death. [Mc. Dep., 28:13-17; Dep. Ex., 9].

4.     As part of McCarter's duties, she was required to participate in the mortality reviews, and to inform the regional team of any observations or concerns that she had regarding the death of the inmate and the related care.  [Mc. Dep., 28:9-

11; 104:18-21; 108:21-23]. McCarter considered voicing concerns about mortality reviews "part and parcel" of her job responsibilities. [*Id.* at 104:18-24].

5.   McCarter alleges that she contacted Prescott regarding "issues with on-site [MHMHP] medical staff, and patient care which was in violation of standards of care resulting in inmate deaths." [Amd.Compl., ¶ 18]. Reporting such concerns was part of McCarter's job. [Mc. Dep., 105:3-10].

6.   In November 2016, an inmate died following a stabbing. [*Id.* at 106:22-25]. McCarter believes that the responding nurse failed to complete a protocol sheet, to properly examine the body, and to count the wounds. [*Id.* at 104:9-17; 105:15-18].

7.   McCarter does not have any medical training or hold any medical licensure. [*Id.* at 101:14-22].

8.   McCarter admits that any failure by the nurse to count the wounds, examine the body, and complete the protocol sheet would have been negligent acts by the nurse that would have violated company policy. [*Id.* at 105:15-21].

9.   McCarter was not terminated after making her concerns known about this incident. [*Id.* at 109:2-5].

10.  In November or December of 2016, an inmate in confinement died when an officer walked away from the cell. [*Id.* at 107:2-25; 106:16-18].

11. McCarter communicated her concerns about the incident to Prescott, as part her job duties. [*Id.* at 107:10-25; 108:17-25].

12. McCarter does not know whether the inmate's death was a result of a lack of adequate medical care by any MHMHP personnel. [*Id.* at 108:11-16].

13. In February of 2017, McCarter reported her concerns about an inmate's death to Dr. John Lay, Regional Medical Director, and Lisa Barton, Regional Director of Nursing. [*Id.* at 89-90:19-12; 37:21-22; 101:11-13].

14. McCarter believed that the clinician's orders had not been carried out by the nurses. [*Id.* at 101:1-3]. McCarter believes that the clinician requested an IV drip be started and to call 911, but the nurses did not comply with those orders. [*Id.* at 102:14-19]. McCarter does not know if the failure to start the IV drip caused the inmate death. [*Id.* at 103:6-9].

15. McCarter admits that any such actions that may have led to an inmate's death would have been negligent acts by the nurses, who would have been acting contrary to company policy. [*Id.* at 102:4-11; 20-22]. McCarter believed that the circumstances leading to the death of the inmate constituted "non-practice." [*Id.* at 119:3-8]

16. After McCarter discussed her concerns with Dr. Lay, Ms. Prescott, and Lisa Barton, she was not terminated. [*Id.* at 90:8-12].

17.    On March 2, 2017, McCarter sent a letter to Vicki Love ("Love"), Regional Vice President, and to Prescott regarding her concerns that she had about the work environment and inmate issues.  [Amd. Compl., ¶¶ 18, 21, Dep. Ex. 32].

18.    McCarter was not terminated when she sent her letter to Prescott and Love.  [Mc. Dep., 87:14-22].  Instead, Sarah Brus from the Human Resources Department came to Jackson on March 6, 2017 to speak with McCarter to address her concerns.  [*Id.* at 92:8-25; 91:7-9].

## II.

## ARGUMENT

### A.    Summary Judgment Standard

One of the primary purposes of summary judgment is to isolate and dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To that end, the United States Supreme Court has held that the plain language of Rule 56(c) of the Federal Rules of Civil Procedure:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322-23.

ACTIVE 43011550v2

The party opposing summary judgment may not simply rest upon mere allegations or denials, but must make a sufficient showing to establish the existence of an essential element to the party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323-24; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir. 1989). If the nonmovant "fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the nonmovant, to support a jury finding for the nonmovant, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254-55 (1986). The burden on the nonmoving party is substantial; a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *Id.*

## B.     McCarter's Whistleblower Act Claim

"[T]he summary judgment analysis for a Title VII retaliation claim should be applied to a claim for retaliatory discharge under the Florida Whistleblower Act." *Rutledge v. SunTrust Bank*, 262 Fed. Appx. 956, 958 (11th Cir. 2008). In order to establish a *prima facie* case of retaliation under the Florida Private Whistleblower Act ("FWA"), an employee must establish that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; (3) the adverse employment action was causally linked to the protected activity. *Graddy v. Wal-Mart Stores East, LP*, 237 F.Supp. 3d 1223, 1226 (M.D. Fla. Feb. 14, 2017) *(citing Kearns v. Farmer Acquisition Co.,* 157 So.3d 458, 462 (Fla. 2d DCA 2015).

McCarter's whistleblower claim fails a matter of law because she cannot establish her *prima facie* case of retaliation in violation of the Whistleblower Act. Moreover, even assuming *arguendo* that she could establish a *prima facie* case, she cannot demonstrate that MHMHP's legitimate reason for her termination was pretextual.

1. **McCarter did not complain about violations of federal, state or local laws, rules, or regulations.**

McCarter brought her claim under Section 448.102(3), *Florida Statutes*, which prohibits an employer from taking retaliatory action against an employee who has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Section 448.101(4) specifically defines a "law, rule, or regulation" as "any statute or ordinance applicable to the employer and pertaining to business." 448.101(4), *Fla. Stat.*

When a plaintiff's claim does not concern a violation of a law, rule, or regulation, but rather a violation of company policy, it does not fall within the coverage of the FWA. *See Lawson v. Dollar Gen. Corp.*, 2006 U.S. Dist. LEXIS 47082 (M.D. Fla. July 12, 2006). Accordingly, an employee's complaint about a violation of *company policy* does *not* constitute protected activity under the Act. *See New World Communications of Tampa, Inc. v. Akre*, 866 So. 2d 1231, 1234 (Fla. 2d DCA 2003) (FCC's policy against the intentional falsification of the news did not qualify as the required "law, rule, or regulation" under § 448.102), *clarified on other*

ACTIVE 43011550v2

*grounds*, 866 So. 2d 1231 (Fla. 2d DCA 2004), *reh'g denied*, 2004 Fla. LEXIS 462 (Fla. Feb. 27, 2004). *Morin v. Day & Zimmermann NPS, Inc.,* 2008 WL 2543432 at *5-7 (S.D. Fla. June 25, 2008) (procedure developed by company was not a law, rule or regulation); *Little v. Foster Wheeler Constr., Inc.,* 2010 WL 2035546, at *9 (S.D. Fla. May 24, 2010) (employer's policies and procedures were not within the scope of protections provided by FWA), *aff'd* 432 Fed. Appx. 907 (11th Cir. 2011).

Here, McCarter's communications regarding alleged negligent care by medical staff does not constitute the violation of a law, rule, or regulation. Instead, McCarter repeatedly testified in her deposition that the alleged negligence contravened company policy. Accordingly, McCarter cannot demonstrate that she engaged in protected activity and therefore cannot establish a *prima facie* case. *See Lawson,* 2006 U.S. Dist. LEXIS 47082, at *8 (granting summary judgment because claims of violation of company policies do not meet the definition of "law, rule, or regulation" under the FWA).

### 2.   McCarter cannot establish that any alleged violations were committed by "the employer."

Section 448.102(3), *Florida Statutes*, prohibits an employer from taking retaliatory personnel action against an employee who "[o]bjected to, or refused to participate in, any activity, policy, or practice **of the employer** which is in violation of a law, rule, or regulation." (Emphasis supplied). A violation of law by an employee, as opposed to a defendant employer, cannot adequately support a claim

14

based under the FWA. *Sussan v. Nova Southeastern Univ.,* 723 So.2d 933 (Fla. 4th DCA 1999); *Douberley v. Burger King Corp.,* 2007 U.S. Dist. LEXIS 29302 (M.D. Fla. Apr. 27, 2007).

Here, any negligence on behalf of the nurses in the incidents complained of by McCarter was *not* an illegal activity, policy or practice of MHMHP. *See Bostain v. Westgate Lakes LLC*, 2011 U.S. Dist. LEXIS 65184 (M.D. Fla. June 14, 2011). *See also Ruiz v. Aerorep Grp. Corp.*, 941 So.2d 505, 507 (Fla. 3d DCA 2006) (dismissing plaintiff's FWA claim after concluding that the employer was not responsible for a tort of an employee where the tort was not committed with the purpose of benefitting the interests of the employer).

While McCarter's amended complaint alleges that "unlawful policies and practices of Defendants were endangering" inmates, her deposition testimony is clear that the any alleged negligence was being committed by individual nurses of MHMHP. More importantly, McCarter testified *repeatedly* that the alleged actions of the nurses were *contrary to MHMHP's company policies.*

Moreover, in order for an employer to be held liable, "the conduct must in some way further the interests of the employer or be motivated by those interests." *Bennett v. Godfather's Pizza, Inc.*, 570 So.2d 1351 (Fla. 3d DCA 1990). Any alleged actions by the individual taken in contravention of MHMHP's policy cannot have been motivated by a desire to further the company's interests. *See Morera v. Sears*

15

*Roebuck and Co.*, 652 Fed. Appx. 799 (11th Cir. 2016) (affirming summary judgment in favor of the employer because the conduct of its employee was "not something [his] employment contemplated"); *See also LaRoche v. Denny's Inc.*, 62 F.Supp.2d 1366 (S.D. Fla. July 23, 1999) (employee was acting outside out of the scope of his employment because his action violated explicit company policies).

Accordingly, because McCarter did not complain about unlawful acts by her employer, but rather by individual nurses taken in contravention of acts that violated company policy, she cannot establish that she engaged in protected activity.

### 3.     McCarter cannot establish an actual violation.

There is a split of authority on the issue of whether a plaintiff must complain about an actual violation of law in order to be protected under the FWA. *Aery v. Wallace Lincoln-Mercury, LLC,* 118 So.3d 904 (Fla. 4th DCA 2013) has been relied upon for the proposition that the FWA does not require a plaintiff to prove that she objected to an actual violation of a law, rule or regulation, but only that she had a good faith, objectively reasonable belief that the complained of employer activity was unlawful. More recently, however, the Second District Court of Appeal ruled that a FWA plaintiff must have "objected to an actual violation of law . . . or refused to participate in an activity that would have been an actual violation of law." *Kearns v. Farmer Acquisition Co.,* 157 So.3d 458, 468 (Fla. 2d DCA 2015).

ACTIVE 43011550v2

Florida federal courts have repeatedly reached the same conclusion reached in *Kearns* - - - that an actual violation of a law, rule or regulation is required to sustain a claim under the FWA. *See e.g. Graddy v. Wal-Mart Stores East, LP,* 237 F.Supp. 3d 1223, 1226-28 (M.D. Fla. Feb. 14, 2017); *Fonseca v. Ferman Motor Car Co.,* 2018 WL 3610541, at *6 (M.D. Fla. July 27, 2018); *Colon v. Total Renal Care, Inc.*, 2007 WL 85263, (M.D. Fla. Nov. 19, 2007) (plaintiff's reasonable belief or mere suspicion that a violation of a law, rule, or regulation occurred is insufficient to establish a claim under the FWA); *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1337 (M.D. Fla. Jan. 26, 2005) (reasonable belief or suspicion of unlawful conduct is insufficient); *Wallace v. Gainesville Hotel Mgmt., LLC*, 2015 U.S. Dist. LEXIS 186301 (N.D. Fla. June 9, 2015) ("[t]his Court is persuaded that the Supreme Court of Florida would follow *Kearns* and not *Aery* because 'the statute is plainly worded as requiring the plaintiff to prove conduct that is *in violation* of the law'"); *Yarcheski v. Keiser School, Inc.,* 2012 WL 13005838 (S.D. Fla. Mar. 30, 2012), *aff'd,* 508 Fed. Appx. 916 (11th Cir 2013); *Paulet v. Farlie Turner & Co., LLC,* 2010 WL 2232662, at *3 (S.D. Fla. June 2, 2010) (("[t]he FWA requires proof of an actual violation of . . . law for the employee to prevail as a whistleblower"); *Charlton v. Republic Servs. of Florida, L.P.,* 2010 WL 2232677, at *3 (S.D. Fla. June 1, 2010) ("the plain language of the statute, as well as legal precedent, demonstrate that the activity protected by the FWA must be an *actual* violation of the law, rule or

17

regulation; a *suspected* violation, even a good faith belief that there is a violation, is not sufficient to trigger the Act's protection") (emphasis in original); *see also Smith v. Psychiatric Solutions, Inc.,* 358 Fed. Appx. 76, 78 (11th Cir. 2009) (trial court correctly applied the actual violation standard, as opposed to the good faith belief standard, in granting summary judgment on FWA claim).

Moreover, on November 22, 2017, the Florida Supreme Court adopted the Florida Standard Jury Instruction No. 415.5, which requires that a plaintiff prove an actual violation of law. *See In re: Standard Jury Instructions on Civil Cases*, 230 So.3d 815, 817 (Fla. 2017); *see also* Fla. Std. Jury Instr. (Civ.) 415.5, n.2. ("as to whether, under F.S. 448.102(3), a claimant must prove an actual violation of law as opposed to a reasonable, good faith belief that a violation of law has occurred, all three federal district courts sitting in Florida have held that the plaintiff must prove an actual violation of law").

Here, McCarter cannot prove an *actual* violation of law. She only points to allegedly negligent acts by nurses that contravened company policy. For that reason, as well, McCarter cannot establish a *prima facie* case under the FWA.

## 4. The "Manager Rule" precludes McCarter's complaints from constituting protected activity.

The "Manager Rule" provides that a management employee cannot engage in protected activity for the purposes of retaliation unless she steps outside her normal job duties to take action adverse to her employer. *McKenzie v. Renberg's,*

*Inc.,* 94 F.3d 1478, 1486-1487 (10th Cir. 1996) (rejecting retaliation claim of a personnel director who reported wage and hour violations to management; the report was part of her job to alert the employer to possible violations and liability).

The Eleventh Circuit adopted the Manager Rule in *Brush v. Sears Holding Corp.,* 466 Fed. Appx. 781 (11th Cir. 2012). *See also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 627-28 (5th Cir. 2008) (affirming district court's grant of judgment as a matter of law based on the manager rule that if an employee were not required to "step outside the role" to engage in statutorily protected conduct "nearly every activity in the normal course of a manager's job would potentially be protected activity," and "[a]n otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees—management employees, human resources employees, and legal employees, to name a few—being difficult to discharge without fear of a lawsuit").

The Manager Rule has been applied to FWA claims by federal courts sitting in Florida. *See, e.g. Wolf v. Pacific Natl Bank,* 2010 WL 5888778, at *10 (S.D. Fla. Dec. 28, 2010) ("[i]t is well established in [whistleblower] cases that a plaintiff does not engage in protected activity by disclosing violations of law as part of his job responsibilities"); *Goodwin v. P. Dyncorp International, LLC*, 2015 WL 12672085 (N.D. Fla. Mar. 30, 2015) (granting summary judgment on FWA claim based on the Manager Rule).

ACTIVE 43011550v2

McCarter testified during her deposition that participating in mortality reviews was one of her job responsibilities. She also testified that, in addition to simply participating in such reviews, elevating any concerns about inmate deaths or care related to inmate deaths to the regional team was part of her job responsibilities.

McCarter in no way "cross[ed] the line from being an employee performing her job … to an employee lodging a personal complaint." *Brush,* 466 Fed. Appx. at 787 (*quoting McKenzie v. Renberg's Inc.,* 94 F.3d at 1486 (10th Cir. 1996)). Accordingly, under the Manager Rule, McCarter cannot establish that discussing her concerns about alleged inadequate medical care with the regional team constituted statutorily protected activity.

## C.     McCarter's Title VII Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, McCarter is required to show that:  1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) there is a causal link between her protected activity and the adverse action. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

Following the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338, 133 S.Ct. 2517, 186 L.

ACTIVE 43011550v2

Ed. 2d 583 (2013), a plaintiff must show more than temporal proximity between the protected activity and his or her termination to satisfy the causation element of a *prima facie* case of retaliation. Instead, a plaintiff must establish that his or her protected activity was a "but-for" cause of the adverse action by the employer. *Nassar,* 133 S.Ct. at 2534.

The "but-for" cause element "requires a closer link than mere proximate causation, it requires that the proscribed animus have a determinative influence in the employer's adverse decision." *Sims v. MVM, Inc.,* 704 F.3d 1327, 1335-36 (11th Cir. 2013). *See also Smith v. City of Fort Pierce,* 565 Fed. Appx. 774 (11th Cir. 2014) (to establish a *prima facie* case of retaliation, a plaintiff must offer evidence from which a reasonable jury might conclude that an employer's retaliatory animus was the "but-for" cause of the adverse action).

If McCarter establishes a *prima facie* case, the burden shifts to MHMHP to provide a legitimate, non-retaliatory reason for the adverse action. *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). Once MHMHP provided such a reason, the burden then shifts back to McCarter to prove, by a preponderance of the evidence, that MHMHP's reason was not a true reason, but merely pretext for retaliation. *Meeks v. Computer Associates Int'l.*, 15 F.3d 1013, 1019 (11th Cir. 1994).

ACTIVE 43011550v2

Pretext means more than inconsistency; pretext is "a lie, specifically a phony reason for some action." *Brown v. Sybase, Inc.*, 287 F.Supp.2d 1330, 1340 (S.D. Fla. Sept. 23, 2003) (*quoting Silvera v. Orange County School Bd*., 244 F.3d 1253, 1261 (11th Cir. 2001)). Whether the reason provided by MHMHP for terminating McCarter was pretext for retaliation must be established by McCarter through "significantly probative evidence." *Johnson v. Atlanta Indep. Sch. Sys.*, 137 Fed. Appx. 311, 315 (11th Cir. 2005); *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citations omitted).

McCarter cannot meet her burden "by simply quarreling with the wisdom of that reason." *Wood v. Calhoun Cty. Fl.,* 626 Fed. Appx. 954, 956 (11th Cir. 2015), *quoting Chapman v. Al Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). Instead, "the inquiry into whether an employer's proffered reasons were merely pretextual centers on the employer's beliefs, not the beliefs of the employee or even objective reality." *Lopez v. AT&T Corp.,* 457 Fed. Appx. 872, 874 (11th Cir. 2012); *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1266-67 (11th Cir. 2010).

## 1. McCarter cannot establish the necessary casual connection

McCarter cannot establish her *prima facie* case because she cannot establish a causal connection between her alleged protected activity and her termination. As addressed above, McCarter must show more than mere temporal proximity.

McCarter must offer evidence from which a reasonable jury might conclude that an employer's retaliatory animus was the "but-for" cause of the adverse action. McCarter must show that the desire to retaliate was the but-for cause of the challenged employment action, i.e., McCarter must show that the unlawful retaliation *would not have occurred* without the alleged wrongful action or actions of the employer. *Nassar,* 570 U.S. 338, at 358-359.

McCarter cannot make the requisite showing that MHMHP would not have taken the same decision, but-for McCarter's complaints. First, McCarter admitted in deposition that she discussed her concerns with Prescott about an inmate death that occurred in November of 2016 and was not terminated. McCarter again admitted to elevating concerns to Prescott, McCarter's supervisor and the termination decision-maker, about an inmate death in November or December 2016 and was not terminated. McCarter additionally reported concerns regarding an inmate's death in February 2017 to the Regional Medical Director and the Regional Director of Nursing and *again* was not terminated. It is unlikely to believe that McCarter was suddenly terminated for raising the same concerns that she raised to multiple members of upper management on numerous occasions prior to her March 2017 letter.

Moreover, McCarter also admits that Prescott reminded her on numerous occasions that she was required to be at work by 7:00 a.m., with the exceptions of

23

Mondays.  It is clear from Prescott's emails to McCarter that Prescott was reviewing McCarter's time and found issue with it – *repeatedly.*  Prescott had a pattern of reminding McCarter of her duty to be on time and McCarter had a continued pattern of clocking in after 7:00 a.m., irrespective of the numerous verbal and written warnings. It is also undisputed that Prescott coached McCarter *for months* and when McCarter continued to be late, Prescott issued increasingly more severe discipline, none of which, with exception of the termination, resulted in any material changes to her employment.  Accordingly, McCarter action cannot make the required but-for showing and, therefore, her *prima facie* case fails.

## 2.    MHMHP had a legitimate and nonretaliatory reason for termination.

Here, even assuming that McCarter could offer evidence demonstrating that MHMHP's retaliatory animus was the "but for" cause of her termination sufficient to set forth a prima facie case, which she cannot, it is undisputed that McCarter was verbally counseled numerous times prior to receiving her first written warning.  It is also undisputed that the counseling began in January 2017, pre-dated McCarter's complaints.  Because McCarter admitted that she cannot identify the number of times anyone else was late, nor can she identify anyone who was late more than she was, logically, McCarter cannot establish that anyone else was late as much as she was late.  In addition, McCarter also cannot identify anyone who continued to be late after being placed on a final written warning.  McCarter also admits that the

time records are accurate and that does not dispute that she was late or absent after receiving the final written warning. There also is no dispute that even the FDOC Warden discussed McCarter's tardy grievance responses with her on at least two occasions prior to her termination and prior to the issuance of the written warning and the final warning, demonstrating that McCarter's performance was affecting the FDOC's operations at Jackson C.I.

Ultimately, McCarter was terminated for not meeting expectations of a Health Services Administrator which included a continued pattern of excessive tardiness. *See Fantroy v. Publix Super Mkts. Inc.*, 2013 U.S. Dist. LEXIS 178198 (M.D. Fla. Dec. 13, 2013) (absenteeism in the workplace is a legitimate reason to terminate an employee); *Bodrick v. BellSouth Bus. Sys., Inc.*, 2006 U.S. Dist. LEXIS 11656, at *9 (N.D. Ga. Mar. 1, 2006) (an employee's non-compliance with employer's attendance policies provides a legitimate reason for terminating an employee); *Jirau v. Camden Dev., Inc.*, 2011 U.S. Dist. LEXIS 113186, at *5 (M.D. Fla. Sept. 11, 2011) (tardiness and absenteeism are sufficient reasons to satisfy the employer's burden of demonstrating a legitimate, non-retaliatory reason for terminating employee); *see Walker v. Hyundai Motor Mfg. of Ala., LLC*, 2016 U.S. Dist. 133569 (M.D. Ala. Sept. 28, 2016) (absenteeism is a legitimate reason for termination).

ACTIVE 43011550v2

### 3. McCarter cannot prove pretext.

To establish pretext, McCarter must show that the "proffered reason is not the true reason for the employment decision." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). Moreover, McCarter must prove that each and every proffered reason for termination is a pretext. If she does not proffer sufficient evidence of pretext regarding each of the defendant employer's articulated reasons, the employer is entitled to summary judgment. *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519 (11th Cir. 1997) (there must be "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action").

As addressed above, it is undisputed that McCarter was verbally counseled about her time and attendance prior to ever lodging any complaints. She also cannot point to any similarly situated employee who had the same severity of tardiness and absenteeism and who was not terminated. Accordingly, McCarter cannot carry her burden of demonstrating pretext and summary judgment should be granted in favor of MHMHP on McCarter's Title VII retaliation claim.

### D. McCarter's Title VII And Section 1981 Race Discrimination Claims

McCarter alleges that she was discriminated against on account of her race in violation of Title VII of the Civil Rights Act of 1964, *as amended*, ("Title VII") and

42 U.S.C. § 1981 ("Section 1981"). Section 1981 claims are analyzed under the same framework as Title VII. *Standard v. A.B.E.L. Services*, 161 F.3d 1318, 1330 (11th Cir. 1998). Where, as here, a plaintiff offers no direct evidence of discrimination, he or she must provide discrimination under the *McDonnell Douglas* burden shifting framework. *McDonnell v. Douglas Corp. v. Green,* 411 U.S. 792 (1973).

In order to survive summary judgment, a plaintiff has the burden of establishing a *prima facie* case by showing: (1) she belongs to a protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified to perform the job; and (4) that her employer treated "similarly situated" employees outside of her class more favorably. *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

## 1.   The only adverse employment action at issue is McCarter's termination.

Not all conduct of an employer that negatively affects an employee constitutes an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). Instead, there must have been a serious change to the terms and conditions of plaintiff's employment. *Id.* Corrective action must result in a change of the terms and conditions of employment such as reduction in pay, benefits, or responsibilities. *See Manley v. DeKalb County Georgia*, 587 Fed. Appx. 507, 513 (11th Cir. 2014)

ACTIVE 43011550v2

Here, McCarter received two write-ups prior to her termination. On March 13, 2017, McCarter received a written warning for violation of MHMHP's Guiding Principles on Professionalism, which addressed McCarter's time and attendance issues and McCarter's lack of responsiveness with regard to inmate grievances. On April 14, 2017, McCarter received a final written warning, which *again* highlighted McCarter's time and attendance and her lack of responsiveness.

Neither the written warning nor the final warning constituted a change in the terms and conditions of employment. McCarter admitted in her deposition that neither corrective action resulted in a demotion or in a pay reduction. Accordingly, the only adverse action at issue with regard to McCarter's discrimination claims is her termination. *See Manley v. DeKalb County Georgia*, 587 Fed. Appx. 507, 513 (11th Cir. 2014) (write-ups do not constitute materially adverse employment actions where there was no reduction in pay, benefits or responsibilities).

### 2. McCarter cannot identify any similarly situated employee who was treated more favorably.

McCarter's termination claim fails on the fourth prong of her *prima* facie case because she cannot identify any comparators who engaged in similarly conduct and were not terminated.

In order to establish a "similarly situated" comparator, a plaintiff must show that she and the comparator "similarly situated in all material respects." *Lewis v. City of Union, GA,* 918 F.3d 1213 (11th Cir. 2019) (*en banc*). This means that a

28

comparator must have "engaged in the same basic conduct (or misconduct) as the plaintiff, . . . will have been subject to the same employment policy, guideline, or rule as the plaintiff, . . . will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff, and . . . will share the plaintiff's employment or disciplinary history[.]" *Id.*

As the HSA, McCarter administratively managed the medical departments at Jackson C.I. McCarter was familiar with and enforced the time and attendance policy applicable to her, her coworkers and subordinates. McCarter was made aware numerous times that she was required to be clocked in at the facility by 7:00 a.m., with the exception of Mondays. McCarter was tardy over *150 times* during her employment with MHMHP despite numerous warnings, both informal and formal. After months of such unsuccessful counseling, McCarter was terminated in large part for her time and attendance.

McCarter has not identified a single comparator who engaged in similar conduct, i.e., an HSA or other administrative manager who reported to Prescott and who was tardy over 155 times and who, after having received both a written warning and final warning for time and attendance, continued to be tardy or absent without being terminated. While McCarter identifies two HSAs who arrived *before* their scheduled start time, she cannot identify HSAs that arrived after their

ACTIVE 43011550v2

scheduled time, received a written warning, received a final warning, and continued to arrive late.

McCarter cannot establish a *prima facie* case because she cannot identify any similarly situated comparator as defined in *Lewis v. City of Union, supra.* Therefore, because McCarter cannot establish a *prima facie* case, "summary judgment is appropriate." *McQueen v. Ala. DOT.*, 2019 U.S. App. LEXIS 11778 (11th Cir. 2019) (*citing Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997)).

### 3. McCarter cannot demonstrate pretext.

Even assuming McCarter could establish a *prima facie* case of race discrimination, which she cannot, she cannot carry her burden of demonstrating that MHMHP's legitimate business reason for her termination was pretextual. On January 8, 2017, Prescott, McCarter's supervisor, sent an informal verbal counseling via email to McCarter regarding her time and attendance and the need to arrive by 7:00 a.m. On January 23, 2017, Prescott again emailed McCarter about her time and attendance. Moreover, McCarter admitted in her deposition that prior to March 8, 2017, the Warden discussed with McCarter the importance of answering inmate grievances in a timely manner. On March 8, 2017, the Warden was again required to speak with McCarter about her performance with regard to inmate grievances.

It is undisputed that McCarter was aware that her supervisor was concerned about her time and attendance and that the Warden was concerned about timeliness of grievances, both in advance of McCarter's complaints and months in advance of her termination. Nonetheless, McCarter continued to be late or absent, which likely also affected her ability to timely handle inmate grievances.

As a result of FDOC's unhappiness with McCarter's handling of inmate grievances and as a result of a continued pattern of tardiness, McCarter was terminated. *See supra*, at (II)(C)(1). As a result, MHMHP has met its burden of articulating a legitimate business reason for its decision and the burden shifts back to McCarter to prove that MHMHP's reason is a pretext for discrimination.

McCarter cannot demonstrate that MHMHP's legitimate and nondiscriminatory reasons for its business decision was mere pretext. *See Chapman v. A-1 Transport*, 229 F.3d 1012 (11th Cir. 2000) (*en banc*); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) ("[i]t matters not whether [a plaintiff] has made out a *prima facie* case if [ ] he cannot create a genuine issue of material fact as to whether [the defendant]'s proffered reasons for firing h[im] are pretext masking discrimination").

To show pretext, plaintiff must offer evidence showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable fact finder could find

31

them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal marks omitted). Mere assertions of speculation regarding a "discriminatory motive is insufficient." *Turner v. Inzer*, 2012 U.S. Dist. LEXIS 137847, at *5 (N.D. Fla. Sept. 26, 2012) (*citing Edwards v. Acadia Realty Trust, Inc.*, 141 F. Supp. 2d 1340, 1346-47 (M.D. Fla. Mar. 9, 2001)); *see also Brown v. Progress Energy*, 364 Fed. Appx. 556, 558 (11th Cir. 2010).

McCarter cannot establish pretext until it is shown that both MHMHP's reasons were false *and* discrimination was the real reason for her termination. *St. Mary's Honor Ctr.,* 509 U.S.C. at 515; *Flowers v. Troup Cnty. Sch. Dist.*, 803 F.3d 1327, 1339 (11th Cir. 2015) ("[c]ontradicting the [employer]'s asserted reason alone…no longer supports an inference of unlawful discrimination"); *Brooks v. County Comm'n,* 446 F.3d 1160, 1163 (11th Cir. 2006) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race…[A] plaintiff may not establish that an employer's proffered reasons are pretextual merely by questioning the wisdom of the employer's reasons, at least not where…the reason is one that might motivate a reasonable employer." (citation omitted)). Thus, to show that a defendant's proffered reason is pretext, the plaintiff must "present *concrete evidence in the form of specific facts…*" *Earley v. Champion Int'l Corp.,* 907 F.3d 1077, 1081 (11th Cir. 1990) (emphases added).

When questioned in deposition about the basis for her race discrimination claim, all McCarter could offer was that she was the only black HSA, that other HSAs were given more leeway, that FDOC and MHMHP staff were not as personable with McCarter, and that McCarter believed that FDOC and MHMHP staff spoke negativity about her (although McCarter was never a party to any such conversation nor did she ever witness this firsthand). [Mc. Dep., 82-85: 19-17]. However, this testimony falls well short of meeting McCarter's burden of proving that MHMHP's legitimate reason for her termination was both false and pretextual. *See Phuong Nguyen v. Ga. Power Co.,* 2013 U.S. Dist. LEXIS 10773 (S.D. Ga. 2013) (granting summary judgment in favor of defendant because it provided a legitimate and nondiscriminatory reason that plaintiff could not prove was both false and pretextual). In addition, McCarter also cannot show that her attendance shortcomings were false, given the testimony by McCarter and Prescott that the attendance dates cited in the written discipline issued to McCarter were accurate. In addition, McCarter admitted to being absent and late after receiving a final warning regarding her attendance issues and McCarter cannot identify *anyone* who continued to be have attendance issues after *repeated* warnings. Accordingly, McCarter cannot establish that both MHMHP's reasons were false *and* that race discrimination was the real reason for her termination. Therefore, summary

ACTIVE 43011550v2

judgment should be granted in MHMHP's favor on McCarter's race discrimination claims.

## III.

## CONCLUSION

For the foregoing reasons, Defendant MHM Health Professionals, LLC respectfully requests that the Court enter an Order granting summary judgment in its favor.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that the Supporting Memorandum of Law does is 7,681 words, exclusive of case style, signature block, and certificate of service, and certificate of compliance with local rule 7.1(F) and does not the exceed the 8,000 word limit.

Dated: May 9, 2019

Respectfully submitted,

/s/Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Cayla M. Page
Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard
Suite 1900

34

Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 9, 2019, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send

a notice of electronic filing to:

Tiffany R. Cruz
FRIEDMAN & ABRAHAMSEN
403 E. Park Avenue
Tallahassee, FL 32301
Tiffany@fa-lawyers.com

/s/Richard C. McCrea, Jr.
Attorney

ACTIVE 43011550v2